Larry Lee **GOFF**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–16987.

Court of Criminal Appeals of Oklahoma.

Feb. 6, 1973.

Jess Horn, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Ray Parks, Legal Intern, for appellee.

OPINION

BLISS, Presiding Judge:

The appellant, Larry Lee Goff, hereinafter referred to as defendant, was charged,

tried and convicted in the District Court of Oklahoma County, Oklahoma, Case No. CRF–71–43, for the offense of Robbery With Firearms. His punishment was fixed at five (5) years imprisonment, and from that judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Tommy Gene Heffron testified that on December 23, 1970, he was employed by and on duty at a Seven Eleven Store on N.W. 23rd Street, Oklahoma City. His testimony revealed that at about 9:00 p. m. a man entered the store, produced a weapon, and ordered the witness to "give me your bills." (Tr. 11) The witness emptied the bills into a paper bag and handed them to the robber. He was then ordered to "lay on the floor" with the robber leaving shortly thereafter. After the robber left the store, Heffron "got up and looked across the street" where he saw a "'62 Ford Fairlane, white." Over the objection of defense counsel and after an evidentiary hearing out of the presence of the jury, Heffron identified the defendant. Further, he identified State's Exhibit Two as the gun used in the robbery. On cross-examination, Heffron testified the defendant was clad in an Army fatigue cap and field jacket, his face was puffy and that his source of identification was from his observation of the upper portion of the defendant's face. Further cross-examination revealed to the jury the details of the lineup. It was pointed out to the jury that the defendant was the only individual in the lineup with bond hair and wearing a mustache and sideburns.

Officer James Clyde Standifird testified he was a member of the Bethany Police Department on the 5th of January, 1970, and that on this date he arrested the defendant for Armed Robbery. At the time of the arrest, the defendant was in front of the Lisa Apartments driving a 1962 or 1963 white Ford Fairlane.

A. J. Clovis, of the Oklahoma City Police Department, testified that upon the authority of a search waiver, he and Major Sharp, of the Bethany Police Department, searched the defendant's residence and found State's Exhibit Two, previously identified as the weapon used in the robbery.

The State rested.

In behalf of the defense, Charles Holt testified that from 6:30 to 10:00 p. m. on the 23rd day of December, 1970, he and the defendant visited at the apartment of George Nakamura. He testified he did not see the defendant commit an offense of any kind in his presence. Further, he testified he owned State's Exhibit Two and had previously given it to the defendant. Finally, he stated he recalled the date, December 23, 1970, as the date of the above events as it was the date that Central State College, the school he was attending, recessed for Christmas vacation. Also on this date, St. John's Day School, the place of his employment, recessed for Christmas vacation.

George Nakamura testifed that on the 23rd day of December at approximately 6:30 p. m., the defendant and Holt arrived at his apartment, left shortly and returned to his apartment shortly prior to 9:00 p. m. accompanied by Doug Estep. He more specifically stated the defendant was at his apartment during the period from five to ten minutes after 9:00 p. m. on this date. Nakamura testified that he could remember the exact date of these events for the reason that his brother had left for California on the 23rd of December and he transported his brother to the airport for his flight. Further, Nakamura testified that at approximately 10:00 to 10:30 p. m., they left his apartment in his car and drove to several bars. Late in the evening they stopped and picked up the defendant's car, proceeded to another bar, and left the last bar at approximately 1:30 a. m. en route to their respective homes.

The defendant testified that he had recently moved back to Bethany from Kansas. Further, he stated he was presently employed but that on the date of the robbery he was unemployed, and was receiv-

ing money from his in-laws and from a car sale transaction. He testified that on the 23rd, after he and Nakamura left the last bar that they had gone to on this evening and while en route to his home, he was stopped by a Bethany policeman who discussed the Seven Eleven Store robbery with him. He was released on that evening and on the 5th day of January, 1972, he was placed under arrest for this offense. He testified that he was placed in a lineup with four other persons, all brunettes with the exception of himself. He further stated he was the only blond haired person in the lineup wearing a mustache and sideburns. The defense rested.

In rebuttal, Tracy Morrow testified she was a student at Central State College and that the college recessed for the Christmas vacation on December 18, 1970.

Father Lucien Dale Lindsey, Jr. testified that he assisted in the St. John's Parish Day School and that school recessed for Christmas holidays on December 18, 1970. The State rested.

■  In the defendant's first proposition he assigns as error the pre-custody identification procedure used by the police in apprehending the defendant. Counsel contends that the procedure used so tainted the identification of the defendant that all identification evidence should have been suppressed.

At the pre-trial motion to suppress, the evidence in pertinent part revealed that on the 26th of December 1970, three days following the robbery, Officer Miotke of the Bethany Police Department presented twelve photographs to Heffron as possible suspects in the robbery in which he was involved. Of the twelve photographs, two were of the defendant, one a mug shot and one a polaroid of the defendant's profile. The other ten photographs were mug shots. All of the photographs were of white males, blond, and approximately the same build; however, the defendant was the only person photographed who wore a

mustache. Both photographs of the defendant were chosen by Heffron.

Subsequent to the photograph identification, Heffron attended a lineup. At this lineup, a group of five white males of the same approximate height, weight and build, were present. However, the defendant was the only blond haired person wearing a mustache and sideburns. At this suppress motion, Heffron unequivocally stated that the observations from the pictures and the lineup did not influence his identification of the defendant. He testified that his identification was based upon his observations at the scene of the robbery. The defendant was the person who committed the offense and it would not have made any difference whether he had seen him at the lineup or on the street, he would have recognized him as the person who committed the offense. The trial court found as a matter of fact that the defendant was identified independently from any improper influence.

Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), is the keystone case on pre-custody identification by photographs. In this case, witnesses had seen six photographs of the defendant out of an undisclosed number of photographs. The Court refused to overthrow the procedure of pre-custody identification of photographs but established a caveat in their use. At page 384, 88 S.Ct. at page 971 of the official Opinion, the Court stated as follows:

> "* * * Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. * * *"

The weight of counsel's argument is predicated upon his assertion that the polaroid profile of the defendant, as compared to

the mug shots of the other individuals, was suggestive and created a substantial likelihood of irreparable misidentification.

In United States v. Cunningham, 423 F. 2d 1269 (1970), the Fourth Circuit reviewed a case which, in character, is very similar to the case at bar. In this authority, an armed bank robbery was perpetrated by several masked individuals. Seven witnesses were called upon to identify photographs which include photographs of Defendants Dews and Cunningham. Four identified Cunningham and two identified Dews. At the trial, two of the witnesses who had identified Cunningham and one who had identified Dews admitted that their identifications were based, in part, upon photographs they had seen prior to trial. In challenging the procedure used by the police, the defense contended the photographs were impermissibly suggestive because five of the fourteen photographs were of Dews and two out of the fourteen were of Cunningham. The only color photographs in the group were of the defendants. All others were black-and-white. The Court stated that no person who identified the defendants relied solely upon the photographic identification so mere color, variety or number of photographs did not, under the circumstances, entitle the defendant to relief under *Simmons*.

Additionally, counsel argues that the lineup was also suggestive and consequently resulted in a tainted identification. We need note only that in defense counsel's cross-examination of Heffron and in the testimony of the defendant, all discrepancies in the lineup were presented to the jury as corroboration of the defendant's alibi. At page 384, 88 S.Ct. at page 971 of *Simmons, supra,* the following language is found:

" * * * The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. * * * "

In Davis v. State, Okl.Cr., 467 P.2d 521 (1970), the Court stated as follows:

" * * * [T]he trial court should conduct a hearing outside the presence of the jury and determine if the pre-trial identification procedure was conducted in accordance with the rule enunciated in United States v. Wade, supra.[1] In the

1. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149.

event that the pre-trial identification was not conducted in accordance with *Wade,* but it is established that the in-court identification can be made from an independent source, then the trial court should permit the State to present the in-court identification."

In the instant case, the identifying witness unequivocally stated that his identification was based upon his observations at the time of the robbery and pre-custody and post-custody identification procedure did not influence his identification of the defendant. We find in applying the interpretation in *Davis, supra,* with the preceding facts and authority, that the declaration of the identifying witness was sufficient independent evidence to permit his incourt identification. See also Davida v. United States, 10 Cir., 422 F.2d 528 (1970). We, therefore, find this proposition to be without merit.

In the defendant's second proposition, he sets forth specific portions of closing arguments alleging that they were prejudicial to his case. We note that, in reviewing these portions of the record, the court, of its own volition, admonished the jury not to consider those portions of the argument which we find could be interpreted as improper. Further, we note that each portion of the argument objected to by counsel alludes to the character of the defendant rather than his guilt or innocence for the offense with which he is charged. One example of this argument is the comment made by the prosecutor in reference to the defendant's undesirable discharge from the service, resulting from a refusal to re-enter combat in Viet Nam.

The record shows that the State's cross-examination of the defendant reveals, without objection, his undesirable discharge from the Army while in Viet Nam. The State alluded to the reason for the discharges and attempted to direct another question, but defense counsel interrupted with, "Just a minute. I want him [defendant] to answer the question." Defendant answered, "A friend of mine, my very best friend there got killed in Viet Nam and died in my arms and we wasn't winning any wars and I just decided right there I wasn't going to fight anymore." In reference to this, the prosecution referred to the defendant as "a twenty-four karat coward." (Tr. 139) This type of argument is obviously in bad taste, unprofessional and improper. Although we do not condone the arguments propounded by counsel, we note that the trial court, in dealing with this portion of the argument, admonished the jury not to consider the comment and the comment was so stricken at the request of counsel. Considering the fact that there is ample evidence of the guilt of the defendant to support the verdict and that the jury assessed the minimum penalty for the offense charged, we find the jury verdict is not based upon deliberations of an impassioned jury. We, therefore, find that under the circumstances of this case, the improper argument was not prejudicial to the defendant and consequently was an error which is harmless in nature.

In the case of Fulks v. State, Okl.Cr., 481 P.2d 769 (1971), the Court stated as follows:

"This Court does not condone the language used; however, it is difficult to say that the defendant was prejudiced thereby to the extent of requiring reversal. The conflict in the testimony was determined in favor of the State. We are of the opinion that there was competent evidence upon which the jury based their verdict. The punishment assessed by the jury was the minimum provided by law. In view of such a verdict, prejudice is not indicated. The judgment and sentence of the trial court is therefore affirmed."

We, therefore, find this proposition to be without merit. Therefore, the judgment and sentence is affirmed.

BUSSEY and BRETT, JJ., concur.