**Darwin Loy HENDERSON, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–18085.**

Court of Criminal Appeals of Oklahoma.

July 24, 1973.

Robert C. Schacher, Jr., Lawton, for appellant.

Larry Derryberry, Atty. Gen., Nathan J. Gigger, Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Judge:

Appellant, Darwin Loy Henderson, hereinafter referred to as defendant was charged, tried and convicted in District Court of Comanche County, Case No. CRF–70–327, for the offense of Rape in the First Degree, his punishment was fixed at fifty (50) years imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial the victim, age forty-seven (47), testified that on June 17, 1970, she was employed at Glen's Lounge in Lawton; that at approximately 10:30 a.m. a man, whom she identified in court as defendant,

came into the lounge. He remained for approximately two and a half hours during which time he drank beer, played music and talked a lot. He left the lounge and returned approximately five minutes later. He ordered another beer and went to the restroom. He returned from the restroom and reported that there was water all over the place. She went back to see what was the matter and the defendant followed her. Defendant stuck a gun in her face and said that he was going to rape her. He grabbed her by the arm and led her across the hall to the storeroom. He made her remove her clothes and forced her to commit oral sodomy. He hit her under the eye with the handle of the gun and commenced having intercourse with her. He became suddenly mad and started beating her about the head. He started to stab her in the back with what looked like a large letter opener. She begged him not to do it and he finally said "all right, you stay right here and don't you move, and he says if that door opens I'll blow your brains out." (Tr. 46) She received a broken arm, broken finger and head cuts all over her head. She was hospitalized for five days. The defendant was wearing a uniform with a patch on his shoulder, a small badge and a holster.

Officer Williams testified that he went to Glen's Lounge on the afternoon in question and observed a woman sitting in a booth in a semi-conscious condition. On cross-examination he testified that as a part of his investigation, he caused a pick-up order put out for one Tommy Barnhill.

Derwin Andrews testified that he went to Glen's Lounge at approximately noon on the day in question. He remained approximately fifteen or twenty minutes and observed a man, whom he identified in court as defendant, in the bar.

David Brooks testified that he went to the bar on the day in question and observed a "considerable amount of blood on the floor."

By agreement of the parties, the testimony of Tom Logan taken at the preliminary hearing was read to the jury. Logan testified that he operated a pawn shop due north of Glen's Lounge. Just before he went to lunch he observed a man come around the back side of Glen's Lounge and get into a maroon Pontiac. After he found out what happened to Rosa, he called the police station and reported that the man he observed looked like Tommy Barnhill. He testified that he could not identify the man.

For the defense, Officer Crabtree testified that in the course of his investigation he obtained a pair of pants, a badge and a shirt. He turned the items over to Officer McCune and did not make any follow-up investigation of the incident.

Sergeant McCune testified that he received a pair of pants, a shirt and a badge from Officer Crabtree. He placed the items in the Property Room where they remained until they were destroyed on September 17, 1970.

Defendant's first five propositions generally assert that the trial court erred in allowing the in-court identification of the defendant by the victim in that the identification was tainted. At the motion to suppress hearing, the victim testified that on June 17, 1970, the date of the offense, the defendant was in the bar for approximately two and a half hours; that while she was in the hospital, a police officer brought her four or five pictures to look at; that the defendant was the only person in uniform in the pictures; that sometime in September of 1970 she observed a picture of the defendant in the District Attorney's Office. At this time she learned the defendant's name. In late October 1971, an assistant district attorney and a deputy sheriff brought the defendant to Glen's Lounge. Prior to bringing the defendant into the bar, she was informed that "we have Darwin Henderson out in the car." Under questioning by the court, the victim testified as follows:

"THE COURT: When you identified this man in a courtroom proceedings, were you identifying him from the use

of the pictures that had been presented to you and from out of seeing the man in the place in which you worked when he was brought there by Mr. Jacobs and the deputy?

"A. Would you repeat that again?

"THE COURT: What, how did you identify this man in the courtroom proceedings? What did you use to identify him in your mind?

"A. Well, the features, I think.

"THE COURT: The features that you had seen in the pictures?

"A. No.

"THE COURT: What features?

"A. That I had seen the person. When somebody attacks you the way I had been attacked, you don't exactly forget.

"THE COURT: That's exactly what we are trying to determine is what you used, so what you in effect are telling the court is that you identified this man from seeing him the day that he attacked you, is that right?

"A. Yes.

"THE COURT: Are you positive of that identification?

"A. Yes.

"THE COURT: You were with him some two or two and a half hours or more?

"A. Yes.

"THE COURT: Could you have identified him if you had never seen these pictures?

"A. I don't think the pictures had anything to do with it, really.

"THE COURT: They don't?

"A. No." (Tr. 25–26)

At the conclusion of the hearing, the Court stated:

"THE COURT: All right, gentlemen, based upon the cases by the Court of Criminal Appeals, in my opinion that the court; after hearing this evidence, should make a finding with reference to the witness, Rosa Nigh's testimony, and the court does find that such testimony or such identification as made in court was based upon recognition of the Defendant which was founded upon sufficient prior viewing of the Defendant on the date of the assault under such conditions as would permit recognition, and that although there was not a lineup of the types of lineup that would be protective of the Defendant's constitutional rights and he was not represented by counsel, that such unconstitutional lineup did not taint the identification of the witness of the named Defendant, and the motion to suppress and the motion to dismiss of the Defendant is accordingly overruled, with exceptions. All right." (Tr. 36–37)

We concur with the trial court's finding that considering the totality of the circumstances that the in-court identification was made from an independent source. In Goff v. State, Okl.Cr., 506 P.2d 585 (1973), we stated:

"In the instant case, the identifying witness unequivocally stated that his identification was based upon his observations at the time of the robbery and pre-custody and post-custody identification procedure did not influence his identification of the defendant. We find in applying the interpretation in Davis, supra,[1] with the preceding facts and authority, that the declaration of the identifying witness was sufficient independent evidence to permit his incourt identification. See also Davida v. United States, 10 Cir., 422 F.2d 528 (1970) . . ."

The final proposition asserts that the verdict is excessive. Suffice it to say from the foregoing statement of facts the verdict does not shock the conscience of this Court. The judgment and sentence is affirmed.

BLISS, P. J., and BRETT, J., concur.

1. Davis v. State, Okl.Cr., 467 P.2d 521 (1970).